**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES**

v.

**TONG LI**

**Criminal Action No. 26-14-3 (JDB)**

---

**MEMORANDUM OPINION & ORDER**

Tong Li is accused of conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine, 100 kilograms or more of marijuana, as well as cocaine and hallucinogenic mushrooms. See Mot. for Review & Appeal of Release Order 2-3, Dkt. 45; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(vii), (b)(1)(C) & 846. He is also charged with conspiracy to commit money laundering. See Mot. 3; 18 U.S.C. § 1956(a)(1)(B)(i) & (h). Li was arrested in the Central District of California on June 3, 2026, and he had his initial appearance before a magistrate judge there the next day. Mot. 2. The magistrate judge denied the government's motion for pretrial detention, but stayed that decision very briefly. This Court granted a further administrative stay of Li's release so that the parties could brief the government's appeal. The matter is now ripe for consideration.

**LEGAL STANDARD**

When a defendant is released by a magistrate judge, the government "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). That motion must be resolved "promptly." Id. The D.C. Circuit has "not squarely decided" the standard of review for such a decision. United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021). But every circuit to

1

have done so has held that review should be de novo.  See United States v. Chrestman, 525 F. Supp. 3d 14, 23 & n.5 (D.D.C. 2021) (collecting cases).  This Court adopts that view.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).  The Bail Reform Act sets out one such exception, providing that defendants must be detained before trial when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"  United States v. Vasquez-Benitez, 919 F.3d 546, 550 (D.C. Cir. 2019).  The government must prove dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence.  United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987).  In making its determination, the court must consider (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the nature and seriousness of the danger posed by the defendant's release, and (4) the weight of the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g).

**ANALYSIS**

A defendant charged with a Controlled Substances Act offense with a statutory maximum sentence of 10 years imprisonment or more faces a rebuttable presumption that there are no conditions that will assure their appearance in court and the safety of the community.  18 U.S.C. § 3142(e)(3)(A).  Li is charged with Controlled Substance Act offenses that carry maximum sentences of 20 years to life imprisonment, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)((B)(vii), (b)(1)(C), so the presumption of detention applies.

The defendant bears a burden of production to "offer some credible evidence contrary to the statutory presumption" of detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985). The "presumption is incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight." United States v. Ali, 793 F. Supp. 2d 386, 391 (D.D.C. 2011). However, it is "not the responsibility of the [defendant] to carry the Government's burden of proof or persuasion." Alatishe, 768 F.2d at 371. And the presumption of detention must be evaluated alongside the Bail Reform Act's general admonition that defendants be "subject to the least restrictive" set of conditions sufficient to assure safety and appearance. 18 U.S.C. § 3142(c)(1)(B).

With the presumption in mind, the Court proceeds to analyze the Bail Reform Act factors.

### A. Nature and Circumstances of the Offense

Li is accused of two serious offenses—conspiracy to distribute large quantities of drugs and money laundering. The presumption of detention for major drug offenses reflects Congress's determination that the charged conduct is serious in nature, see Ali, 793 F. Supp. 2d at 391 (explaining that the presumption is "incorporated into the [Bail Reform Act] factors"), just as the lengthy maximum sentences do. As to the circumstances of this case, Li is accused of being the leader of a drug trafficking organization that has conspired to distribute over 500 grams of methamphetamine and over 100 kilograms of marijuana as well as cocaine and psylocibin mushrooms.[1] Mot. 2-4. Moreover, the government alleges that the drug ring has laundered over $7 million in cryptocurrency alone and an unknown amount in cash, and moved over $186,000 in

---

[1] Specifically, the government ties Li to a stash house from which the government seized 1,306 pounds of marijuana, 328 pounds of psylocibin mushrooms, 867 grams of methamphetamine-laced counterfeit Adderall, 109 grams of cocaine, and other marijuana and mushroom edibles. And the government connects Li to 39 kilograms of methamphetamine sold to an undercover agent, including 16 kilograms allegedly sold by Li's subordinate, Chang Hoon Lee.

drug proceeds out of law enforcement reach earlier this year. Id. at 1, 6. The scale of the alleged trafficking and money laundering operation underscores the seriousness of the charges.

Li's frontline argument on flight risk is that the government conceded there is no such risk at Li's initial detention hearing. Opp'n 3, Dkt. 61-1. Without the record of that proceeding before it, this Court cannot verify whether that is indeed so. The government does not have that transcript either but denies that it concedes that Li is not a flight risk, at least as to its motion before this Court. Reply, Dkt. 52. In surreply, Li's counsel reiterates his recollection from the initial hearing. Surreply, Dkt. 58-1. In any event, Li cites no cases to suggest that the government is bound in perpetuity before this Court (with original jurisdiction over the prosecution) to the position taken by other government lawyers before a magistrate judge at the initial hearing in another district. And this Court must conduct de novo review of the initial detention decision and evaluate the 18 U.S.C. § 3142(e) factors, bearing in mind the presumption of detention for serious drug offenses.

Before this Court, the government alleges that Li is a flight risk, notably asserting that he has organized drug trafficking suppliers in Mexico. Mot. 11. Indeed, the presumption of detention reflects Congress's judgment that "flight to avoid prosecution is particularly high among persons charged with major drug offenses," in part because "drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country." Alatishe, 768 F.2d at 370 n.13 (quoting S. Rep. No. 98-225, at 20 (1983)). Thus, drug trafficking ties to Mexico weigh strongly in favor of finding that Li is a flight risk. Moreover, Congress also emphasized the "significant risk of pretrial recidivism" for persons charged with major drug felonies "because of the nature of the criminal activity with which they are charged." Id. (same). Here, the government alleges that, even after a raid of Li's residence and a drug stash

house in January 2026 that led to two arrests, Li continued to traffic in drugs. Mot. 6. That underscores the risk of recidivism during pretrial release.

Li next argues that the release conditions set by the magistrate judge—no contact with defendants, co-conspirators, witnesses, or victims; restrictions on electronic communications; and reporting to Pretrial Services—are sufficient. Opp'n 3-4. This Court is not convinced. If the mere imposition of such conditions was by itself enough to prevent flight and protect the community, then that would obviate the need for any detention ever. Unfortunately, some individuals charged with crimes do flee or harm the community during pretrial release, so an evaluation of the particular circumstances at hand is required. In turn, that addresses Li's final argument, which is that serious charges do not make detention automatic. Id. at 4-5. Fair enough. But this Court is conducting an individualized assessment of the circumstances, including the seriousness of the alleged drug offenses and the evidence of continued criminal activity even after Li was on notice that he was under investigation. Indeed, this Court already determined that defendant Chang Hoon Lee—who the government alleges reported to Li—posed a flight risk and danger to the community. United States v. Lee, Civ. A. No. 26-14-2, 2026 WL 292427 (D.D.C. Feb.4, 2026). A fortiori, so does Li as the alleged ringleader of the conspiracy.

On balance, the nature and circumstances of the offense favor detention. Trafficking large quantities of controlled substances poses a danger to the community and the seriousness of the potential sentences creates a flight risk.

### B. History and Characteristics of the Defendant

When considering Li's history and characteristics, the Court must evaluate "(A) [his] character, physical and mental condition, family ties, employment, financial resources, length of

residence in the community, community ties,[2] past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, [he] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3). Subparagraph (B) does not apply here.

Li has a limited criminal history—arrest and deferred judgment for possession of a controlled substance nearly 20 years ago. See Mot. 11-12. However, he does not assert any community ties either in Los Angeles or, more importantly, in the Washington, D.C. area. For its part, the government alleges that Li was born in China and became a naturalized U.S. citizen as a teenager, has a passport, and has traveled abroad. Id. at 7.

Li's first argument as to his history and characteristics is that his lawyer contacted the government on April 30, 2026, to request a conversation about the investigation into Li, and then stated on May 12, 2026, that Li was willing to surrender voluntarily in the District of Columbia. Opp'n 5. But a willingness to surrender voluntarily does not by itself demonstrate a lack of flight risk or recidivism while on pretrial release once a defendant has a better sense of the strength of the evidence and the potential consequences of the charges. And although he did not get the chance to make good on his asserted willingness, an attorney's statement that a client would voluntarily surrender necessarily carries less weight than a voluntary surrender itself.

Next, Li offers property documents to support the availability of a secured bond as a further condition on release, although he maintains that a $10,000 bond is sufficient. Id. at 5-6. The property is in the name of Qin Fei Li and Zhou Qing Tong and is appraised at $960,000. Li does

---

[2] Li asserts that the release order "directed" that Li "live in the District of Columbia area," but he would have been released in the Los Angeles area, so the Court considers both communities here.

not explain how he is related to the owners of the property.  But even assuming the owners are close family members, the Court is unconvinced that the possibility of such a bond weighs in favor of pretrial release.

As explained above, the presumption of detention for major drug offenses is founded on Congress's judgment that such conduct is "extremely lucrative," giving defendants "the resources . . . to escape to other countries with relative ease."  Alatishe, 768 F.2d at 370 n.13 (quoting S. Rep. No. 98-225, at 20 (1983)).  Here, the government alleges that Li had over $40,000 in cash in his home, moved out of law enforcement's reach $186,000 in cryptocurrency right after the January 2026 enforcement operations, and laundered around $7.1 million in cryptocurrency alone. Mot. 1, 3, 6.  As such, the risk of losing a substantial bond may be "a mere cost of doing business." United States v. Battle, 59 F.Supp.2d 17, 19 (D.D.C. 1999) (citing S. Rep. No. 98-225, at 20 (1983)).  And the Bail Reform Act also provides that the Court may sua sponte consider "the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond." 18 U.S.C. § 3142(g)(4).  Li told Pretrial Services that he is self-employed, but the government has linked at least two of the three companies he runs to his drug trafficking organization, potentially casting doubt on the source of funds used to finance this property.  Mot. 6-7.

In sum, Li's significant financial resources, ties abroad, and lack of asserted community ties in either relevant community in the United States weigh in favor of detention despite his offer of voluntary surrender and of property as collateral for a bond.

### C.  Nature and Seriousness of Danger Posed by Release

Courts must consider a broad construction of potential dangers posed by release, including the risk that a defendant will "continue to engage in drug trafficking."  United States v. Taylor, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) (quoting 3B Charles A. Wright & Arthur R. Miller, Federal

Practice and Procedure § 766 (4th ed. 2013) (quoting S. Rep. No. 98-225, at 12-13)). Li is accused of trafficking wholesale quantities of cocaine, methamphetamine, psylocibin mushrooms, and marijuana. And the government alleges that Li has continued his drug trafficking activities even after having his home searched, stash house raided, and associates arrested. Moreover, methamphetamine is a particularly lethal drug. Mot. 12-13. Accordingly, the Court finds a substantial danger of recidivism and harm to the community from release.

### D. Weight of the Evidence

This final factor must be considered but "is the least important." United States v. Padilla, 538 F. Supp. 3d 32, 43 (D.D.C. 2021) (quotation omitted). The government argues that the evidence against Li is overwhelming, including communications seized from Li's and his co-defendants' phones, surveillance footage placing him repeatedly at a stash house, physical evidence from the seized drugs, and financial tracing of cryptocurrency controlled by Li. Mot. 13. Although the Court imagines that Li will contest that evidence as the case moves forward, he does not do so in his opposition, so the Court finds that this factor also weighs in favor of detention.

\* \* \*

In sum, for the reasons explained above and bearing in mind the presumption of detention, the Court finds that pretrial detention is warranted here. The government has carried its burden to establish dangerousness by clear and convincing evidence, particularly because Li is allegedly the leader of this drug trafficking conspiracy and continued to deal lethal drugs even after having his home searched, stash house raided, and associates arrested earlier this year. The government has also met its burden to show flight risk by a preponderance of the evidence, especially considering Li's alleged international ties—including to drug traffickers in Mexico—and significant financial resources, as well as the severity of the potential sentences.

Accordingly, upon consideration of [45] the government's motion for review and appeal of release order, [61-1] defendant's opposition, [52] the government's reply, [58-1] defendant's surreply, and the entire record herein, it is hereby **ORDERED** that the motion is **GRANTED**, and the prior release order is hereby **VACATED**.  It is further **ORDERED** that defendant **TONG LI** be held without bond until further order of this Court.  **SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Date: June 12, 2026