UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 26-CR-14 (JDB) |
| | : | |
| | : | |
| TONG LI, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT TONG LI'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION
FOR REDETERMINATION OF DETENTION ORDER**

This Court should grant Defendant Tong Li's Motion for Redetermination of

Detention Order and set release conditions. To meet the standard for redetermination of a

bond order, Mr. Li must meet only one of the following requirements: (1) the need to

prevent manifest injustice; (2) the need to correct clear error; (3) the existence of new

controlling law; or (4) the availability of new evidence. Although Mr. Li is only required to

meet one requirement, he can meet all four. Upon redetermination, this Court can fashion

conditions of release to guarantee both Mr. Li's appearance in court and the public's safety.

I.    Argument

The government erroneously argues that Mr. Li has failed to provide a legal basis to

redetermine bond. As the government concedes, the Bail Reform Act ("BRA") specifically

allows for the reopening of a bond hearing "at any time before trial" where there is

information that "was not known to the movant at the time of the hearing" and that has "a

material bearing" on the issue of detention. 18 U.S.C. § 3142(f)(2). The government further

acknowledges that a district court may reconsider a detention order "as justice requires."

*Cobell v. Norton,* 355 F. Supp. 2d 531, 539 (D.D.C. 2005). In evaluating motions for reconsideration in criminal matters, district courts apply the analogous standards from civil procedure. *See In re Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016). Reconsideration is proper where there exists an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations omitted). While Mr. Li needs to satisfy only one ground for this Court to grant reconsideration, he can establish all four grounds.

### A. Preventing Manifest Injustice

This Court should find that "justice requires" reconsideration of Mr. Li's bond. *See Cobell*, 355 F. Supp. 2d at 539. While the D.C. Circuit has not addressed this precise procedural requirement, the Seventh Circuit has held that a district court reviewing a magistrate judge's bond determination must either review the transcript or conduct its own hearing. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). The court in *Torres* concluded that reviewing the briefing of the parties, without either the transcript or the opportunity for testimony under Section 3142(f), was insufficient. *Id.* As *Torres* observed, "[c]ounsel's summary is not evidence." *Id.*

*Torres'* principles apply here. Because this Court lacked both the original hearing transcript and the Pretrial Services report from the Central District of California, material factual errors infected the record. Given the fundamental nature of the right to liberty, with pretrial detention as the "carefully limited exception," *United States v. Salerno*, 481 U.S. 739, 755 (1987), it is manifestly unjust to deny Mr. Li an opportunity for a full and fair

2

bond assessment that includes reviewing and considering what transpired in the original bond hearing where release conditions were imposed in the Central District of California.

## B. Clear Error

Reconsideration is also warranted because this Court's detention order rests on clear legal and factual errors.

### 1. Legal Error

This Court applied an incorrect legal standard based on flawed precedent: specifically, giving "substantial weight" to the statutory presumption of detention after Mr. Li successfully rebutted it. (ECF No. 62 at 3). The government notes that Mr. Li only cited to cases that are more than 15 years old; however, analyzing that precedent was necessary to expose the flawed foundation of the "substantial weight" doctrine. That standard remains in use within this District, including in this case. *See, e.g., United States v. Lee*, No. CR 26-14 (JDB), 2026 WL 292427, at *1 (D.D.C. Feb. 4, 2026).

The government attempts to minimize this error by arguing that Mr. Li is "myopically focused on the word substantial." (ECF No. 95 at 5). But use of the wrong evidentiary standard is not immaterial. The D.C. Circuit has confirmed that improperly weighing a factor in a balancing test is legal error. *See United States v. Zobel*, --- F. 4th ---, 2026 WL 2065959, at *6–12 (D.C. Cir. 2026).

Furthermore, the government misconstrues *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985). While *Jessup* noted that courts should keep Congress' underlying concerns in mind, the question presented was whether the presumption of detention should operate as

a "bursting bubble" upon rebuttal.[1] *Id.* at 382–83. Reminding courts to keep Congressional policy "in mind" differs sharply from assigning the presumption "substantial weight" after rebuttal. Mr. Li maintains that *Jessup* wrongly decided that issue, as the presumption should not carry any weight after its rebuttal. But even under *Jessup*, there is no support for giving the presumption "substantial weight." The government takes the language from *Jessup* out of context and stretches it to support a legal standard the First Circuit never endorsed. Applying this heightened standard constituted clear legal error.

    2.   Factual Error

This Court's detention order also contains material factual errors. The government characterizes these arguments as claims of "new information," but that is inaccurate. (ECF No. 95 at 2-3). Mr. Li does not claim these facts are new to him. Rather, these factual errors demonstrate that the Court either lacked complete information or misapprehended the record.

In its opposition, the government does not acknowledge that this Court lacked both the transcript of the original bond hearing and the Pretrial Services report from the Central District of California. (ECF No. 62 at 4). Additionally, it mischaracterizes or minimizes the errors in the detention order. For example, it highlights that this Court knew that Mr. Li had been a U.S. citizen since he was a teenager and that he lived in Los Angeles. (ECF No. 95 at 3). But it completely ignores this Court's total lack of information regarding Mr. Li's expansive community ties to the area, including his familial, residential,

---

[1] *Jessup* also affirmed the constitutional validity of the presumption framework, *see* 757 F.2d at 386, but that holding also did not address the evidentiary weight assigned to the presumption of detention after rebuttal.

educational, and employment history in Los Angeles County. (ECF No. 62 at 6: "However, he does not assert any community ties either in Los Angeles or, more importantly, in the Washington D.C. area."). Mr. Li's motion for redetermination discussed his lifelong ties to the Los Angeles area. (ECF No. 86 at 6). Since arriving in the United States at approximately two years old, he has always lived in Los Angeles. Los Angeles is where Mr. Li has gone to school, including up to college, and it is where he has always worked. Pretrial Services in the Central District of California confirmed his legitimate employment.[2] His entire family, including his wife and two minor children, along with his parents, and his wife's family, all reside in Los Angeles. Moreover, he does not have the type of foreign ties that the government alleges he has.

The government's opposition primarily focuses on Mr. Li's procedural failure to meet the standard for reconsideration, giving little attention to his substantive arguments concerning the § 3142(g) factors. Notably, the government fails to rebut corrections to key factual allegations. Its silence is essentially an admission: it cannot defend the claims that it previously made.

First, the government provides no further explanation as to Mr. Li's alleged drug trafficking ties in Mexico. This Court still has no information regarding the source of this allegation.[3] The government's allegation appears rooted in its assertion that co-defendant

---

[2] In his motion for redetermination of detention order, Mr. Li submitted a letter from one of his business partners in his healthcare management business, ECF No. 86: Ex. D, a business that the government does not contend has any connection to the underlying offense.

[3] This is not the government's first occasion of proffering inaccurate facts to this Court in support of a detention order. In the case against co-defendant Ken Chiaen Chanlee, the government initially argued that he owned an apartment in Mexico, which co-defendant

Chanlee was a "high-level supplier" who allegedly obtained drugs from several suppliers in Mexico. (ECF No. 47 at 1-3). Second, the government fails to explain why it ignored Mr. Li's overtures at self-surrender—a fact that seriously undermines its position that Mr. Li is a serious flight risk. Finally, the government has not addressed its claim that Mr. Li continued to participate in criminal activity even after he was on notice that he was under investigation from January 2026. Although Mr. Li invited the government to submit evidence to support its proffer that he was still involved in illicit activity after his detention in January of 2026, the government's brief offers none.[4] Thus, it is clear that the government cannot prove that *Mr. Li himself* continued to participate in criminal activity after the raid. The government seems to be merely imputing to Mr. Li the conduct of his co-defendants.

This Court's order of detention was based on a series of incorrect allegations, facts that were out of context or incomplete, and a lack of crucial information necessary for a thorough analysis of the Section 3142(g) factors. Cumulatively, these errors merit reconsideration, and the full picture now before this Court demonstrates that conditions of release should be set.

---

Chanlee denied. At the hearing, the parties clarified that although a deposit on an apartment was made, that has since been forfeited. (ECF No. 92 at 4: fn. 1).

[4] Significantly, this Court set release conditions for co-defendant Chanlee, who the government characterized as a "high-level supplier" and allegedly was directly involved in a drug transaction after January of 2026. (ECF No. 92 at 1, 5). Despite the government presenting some evidence to support such allegation, and despite this Court finding said allegation to be troubling, this Court still set release conditions for that co-defendant. (ECF No. 92 at 5). Notably, the government alleges that co-defendant Chanlee had drug suppliers in Mexico, traveled to Mexico three to five times per month between January and May of 2026, and possessed a firearm. (ECF No. 92 at 2, 3, 5, 7).

## C.  New Law

Reconsideration is independently required following the Supreme Court's recent decision in *Wolford v. Lopez*, 609 U.S. ---, 2026 WL 1825723 (2026), which was decided after this Court's detention order in this case. Under *Wolford*, the presumption of detention places a "new and significant burden" on Mr. Li's exercise of the right to liberty, such that it can no longer pass constitutional muster. The government misunderstands Mr. Li's position, asserting that the only connection between *Wolford* and Mr. Li is the existence of the word "presumption." (ECF No. 95 at 4). But Mr. Li does not suggest *Wolford* is apposite simply because the Hawaii law at issue in that case presumptively prohibited firearms under certain circumstances. The "presumption" in that law is entirely irrelevant to Mr. Li's argument. The connection between *Wolford* and Mr. Li's case is that both the Hawaii statute and the BRA involve a traditional right. *See id.* at *6. In *Wolford*, the law infringed on the traditional right to bear arms; here, the BRA infringes on the traditional right to liberty.

It does not matter that *Wolford* involves a different fundamental right. The issue in *Wolford* is whether a law is placing a "new and significant" burden on one of those rights, and the presumption of detention does indeed do that. Mr. Li's motion for redetermination pointed to several other contexts in which the Supreme Court is assessing the history and tradition of rights; it is not merely relevant to Second Amendment analysis. (ECF No. 86 at 18: right to due process, guarantee of a unanimous jury trial, free speech and exercise). Thus, given the recent holding in *Wolford*, this Court should reconsider its order

7

of detention and conduct a new bond analysis without applying a constitutionally impermissible presumption of detention.

### D.  Information Not Previously Known to the Movant/New Evidence

Mr. Li presents previously unknown information about potential sureties and collateral. Although the government claims that Mr. Li already possessed this information, Mr. Li did not know the specific assets that his family members were willing and able to pledge on his behalf. Indeed, this Court mentioned in its detention order that it did not know Mr. Li's relationship to the owners of the property being presented as collateral for bond. (ECF No. 62 at 6-7). Regardless of whether the District of Columbia uses a cash or collateral bond system[5], this information is relevant in terms of assessing the solvency of the sureties including "the values of [their] assets and liabilities." 18 U.S.C. § 3142(c)(1)(B)(xii).

Additional facts about the availability or suitability of potential living arrangements or sureties constitute new, material information under the BRA. *See United States v. Thomas*, No. CR 23-0069-1 (CKK), 2024 WL 519910, at *2–3 (D.D.C. Feb. 9, 2024). *Thomas* is instructive here. In that case, the defendant presented an "offer [of a residence] which was not previously available" as well as the fact that Pretrial Services] has found the family's residence to be "a suitable placement for Defendant if released." *Id.* at *2. The district court deemed this "new and material information related to his housing" and ordered release. *Id.* at *3. Similarly, the district court in *United States v. Caldwell* found that

---

[5] Mr. Li nevertheless proposes that his bond be secured by two real properties belonging to his parents valued at approximately $1.5 million along with a $100,000 cash deposit from his wife.

details about the "suitability" of a third party custodian could be new information bearing on whether a defendant is a danger to the community. *See* No. CR 21-181 (CKK), 2022 WL 168343, at \*10 (D.D.C. Jan. 19, 2022). This Court has previously noted that certain "supervisory conditions," such as home detention and the selection of a suitable, third party custodian can mitigate the Court's concern for the safety of the community. *See United States v. Klein*, 539 F. Supp. 3d 145, 155 (D.D.C. 2021) (noting that despite previous convictions for unlawful possession of a firearm, "it is possible that appropriate conditions on [the defendant's] release might provide sufficient assurances of community safety").

Here, Mr. Li presents new information about both availability and suitability of sureties and their finances. Crucially, Pretrial Services in the District of Columbia screened and deemed both Mr. Li's wife and mother eligible as third party custodians. Exhibit A is an email dated July 7, 2026 from Pretrial Services screening and deeming eligible two third party custodians.[6] Mr. Li's wife and mother are both committed to helping him and serving as the eyes and ears of Pretrial Services and the Court. Thus, under the case law, these facts are "information not known to the movant" under 18 U.S.C. § 3142(f)(2).

## II.     Conclusion

For these reasons, Mr. Li requests that this Court grant his Motion for Redetermination of Detention Order. In doing so, Mr. Li requests that this Court impose

---

[6] Mr. Li anticipates that both of his parents and his brother-in-law are flying from California and will be present for the upcoming bond hearing on July 28, 2026. Mr. Li's wife is not expected to be present for the bond hearing because she needs to be at home in Los Angeles to take care of their two minor children. Mr. Li's family was also present at the original bond hearing in the Central District of California. (ECF No. 86 at 6).

conditions of release to include home detention and a GPS device similar to his co-defendant Chanlee.

Respectfully submitted this 27th day of July 2026.

Respectfully submitted,

TOMMY VU

_____/s/ *Tommy Vu*_____

TOMMY VU
Stitt Vu Trial Lawyers
501 W. Broadway Suite 730
San Diego, CA 92101
Telephone: (619) 255-0553
tvu@stittvu.com