UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
        v.                        :          CRIMINAL NO. 26-CR-14 (JDB)
                                  :
                                  :
TONG LI,                          :
                                  :
        Defendant.                :


**DEFENDANT TONG LI'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL
EVIDENCE**

At the July 28, 2026 bond reconsideration hearing, this Court gave the parties a

deadline of July 30, 2026 to provide additional evidence relevant to whether Tong Li poses a

danger to the community. On July 29, 2026, the government filed "supplemental evidence."

(ECF No. 103). Despite the name, the government's filing is not supplemental. It merely

provides more pages of briefing rehashing the same arguments already made. The

government's supplemental response establishes what was already clear—there is *no* direct

evidence of Mr. Li committing any crimes after the search warrant was executed in January.

The government failed to answer the Court's key question at the end of the hearing:

whether Mr. Li himself controlled the cryptocurrency wallets on January 28 and 29. It

simply provided evidence that *another* person engaged in drug trafficking post-search

warrant. Mr. Li did not transfer cryptocurrency funds on the evening of January 28, 2026—

that was someone else. And Mr. Li did not sell drugs to an undercover agent after January

28, 2026—that was someone else. In sum, the record today concerning Mr. Li's post-search

warrant connection to the relevant cryptocurrency wallets remains unchanged from what it was at the July 28, 2026 hearing.

Without actual evidence of Mr. Li's involvement, the government continues to rely on Mr. Li's alleged leadership role. The government claims that because Mr. Li was the leader before the search warrant was executed, he therefore must have been involved in any drug sales occurring between that search and his arrest four months later. These arguments essentially attempt to shift the burden to Mr. Li to prove he *wasn't* involved in the two undercover sales. But the burden of proof remains on the government to prove, by "clear and convincing evidence," that Mr. Li's release poses danger to the community. *See United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)).

The government cannot meet that burden with mere speculation and opinion, such as its assertion that "[w]here there is clear and convincing evidence that the DTO that the Defendant led continued to operate, the Defendant cannot credibly disclaim responsibility for its operations." (ECF No. 103). This is not evidence; that is opinion. If the DTO was as sophisticated an organization as the government claims, it is just as plausible that it could continue even in the absence of its alleged leader. As the government acknowledges, it was all the same products, the same prices, the same customers, and the same payment infrastructure. (*Id.*). A business that has been established for years can survive while its leader is out of commission; this is true of legitimate businesses just as it is for DTOs. The history of international drug trafficking indeed demonstrates that just because a leader is

somehow incapacitated, drug trafficking does not cease. Where there are still buyers and sellers and drugs, no single person is indispensable.

The best evidence the government has mustered is proof that a co-conspirator known as SHARKY made two drug sales to undercover agents in May of 2026. It believes those sales match the pattern of sales occurring prior to the raid in January of 2026. But when examining this evidence, there is a crucial missing link—Mr. Li. The government has presented no communication between SHARKY and Mr. Li after January 28, 2026 (the last communication was dated January 1, 2026).[1] Exhibit A is the government's PowerPoint slide #22. The government has presented no evidence that Mr. Li was SHARKY's only source of drug supply. And the government itself concedes that the four operational cryptocurrency wallets were used by Mr. Li *and* at least one other co-conspirator[2]; it has no direct evidence that Mr. Li used the wallets during the May 2026 drug sales (or at any time after January 28, 2026, for that matter).

The government claims that if Mr. Li "had the power and means to run the DTO, he had the ability to shut it down," but this argument is flawed for several reasons. (ECF No. 103 at 4). First, what proof does the government have that Mr. Li possessed the control to shut everything down? It acknowledges that other alleged co-conspirators had access to narcotics and cryptocurrency wallets, giving them full ability to conduct the business without Mr. Li. If other co-conspirators desired to continue engaging in illegal activity and

---

[1] Based on the government's presentation, communication between Mr. Li and SHARKY was sporadic and most occurred between July and August of 2025.

[2] While the government asserts that it is aware of two individuals with access to these cryptocurrency wallets, including Mr. Li, Mr. Li clarifies that there are at least four people who have access.

the infrastructure existed, there is no certainty that Mr. Li could have successfully ordered them to stop. Additionally, the law does not place any burden on a conspirator who is withdrawing from a conspiracy to actively shut down the activities of the conspiracy. When analyzing whether Mr. Li is a danger to the community, this Court is looking at whether Mr. Li is likely to sell drugs while on bond—not whether Mr. Li took on the potentially dangerous role of trying to affirmatively stop alleged co-conspirators. In fact, had Mr. Li taken extensive steps to shut down the entire DTO as a means to hide its operations from the government, the government might have perceived his actions as an obstruction of justice.

Finally, the government's arguments regarding the co-defendants are not persuasive given the individualized determination required under the Bail Reform Act ("BRA"). "[D]etention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Munchel*, 991 F.3d at 1280 (interpreting the BRA). The determination of bond is not a rigid, formulaic calculation based solely on a defendant's level of involvement in the crime.

Thus, the detention of a lower-level co-conspirator does not lead to an inherent conclusion that all higher ranked defendants must also be detained. It is possible for a defendant who played a very minimal role in a DTO to be a greater threat to public safety than the alleged kingpin of that DTO; it all depends on the individual Section 3142(g) analysis. The two co-defendants highlighted by the government are both great examples of

this.[3] Valley Chung is alleged to have reported to Mr. Li and thus is lower in the alleged

hierarchy of the DTO, but he has a prior kidnapping conviction that the government itself

characterized as "a serious violent felony." (ECF No. 29 at 4). In addition to criminal history

involving violence and weapons, Valley Chung also had prior parole violations and was on

probation at the time of the instant allegations. (ECF No. 67 at 11). Chang Hoon Lee is

similarly lower in the hierarchy. But he lacked legitimate employment, had two prior

convictions, and lied to Pretrial Services about the amount of cash and unregistered

firearm that he possessed. (ECF No. 15). These two co-defendants stand in sharp contrast

to Mr. Li, who has no criminal convictions and possessed no firearms. Further, he was

honest with Pretrial Services and has legitimate employment.

In sum, the government's supplemental filing is nonresponsive to this Court's July

28 request and fails to move the needle in the direction of detention. The government has

not met its high burden to prove by clear and convincing evidence that Mr. Li poses a

danger to the community. Detaining him based on any of the government's arguments

regarding the actions of other alleged co-conspirators is contrary to the BRA's guarantee of

an individualized assessment to ensure due process.

---

[3] It should also be noted that the government failed to mention co-defendant Ricky Choe, who allegedly reported to Mr. Li and was released on bond. (ECF No. 102).

Respectfully submitted this 30th day of July 2026.

Respectfully submitted,

_____/s/ *Tommy Vu*_____

TOMMY H. VU
Stitt Vu Trial Lawyers
501 W. Broadway Suite 730
San Diego, CA 92101
Telephone: (619) 255-0553
tvu@stittvu.com


_____/s/ *Kobie Flowers*_____

KOBIE A. FLOWERS
Flowers Keller LLP
1601 Connecticut Avenue, NW
Washington, D.C. 20009
Telephone: (202) 993-1282
kflowers@flowerskeller.com